UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------

                                  :

HEALTHSPOT, INC.,                :
                                  :

                                  :      CASE NO. 1:14-CV-00804
             Plaintiff,        :
                                  :

vs.                                :      OPINION & ORDER
                                  :      [Resolving Doc. 14]

COMPUTERIZED SCREENING, INC.,  :
                                  :

             Defendant.     :
                                  :

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

       In this patent case, Plaintiff HealthSpot, Inc. ("HealthSpot") seeks a declaratory judgment that its products do not infringe patent rights held by Defendant Computerized Screening, Inc. ("CSI").  Alternatively, HealthSpot asks for a ruling that CSI's patent claims are invalid.

       Defendant CSI has filed a motion to dismiss for lack of personal jurisdiction.[1]  In the alternative, CSI's motion asks the Court to decline to exercise its discretionary jurisdiction over this declaratory judgment action and either dismiss it or transfer it to the District of Nevada.[2]  HealthSpot has filed a response,[3] and CSI has filed a reply.[4]  For the reasons below, the Court **DENIES** Defendant CSI's motion to dismiss for lack of personal jurisdiction.  The Court also **DENIES** CSI's alternative argument that the Court should decline to exercise its discretionary jurisdiction over this declaratory judgment suit.

---

[1]Doc. 14.
[2]*Id.*
[3]Doc. 19.
[4]Doc. 26.

Case No. 1:14-CV-00804
Gwin, J.

## I. Background

Both parties sell to the market for health kiosks. Health kiosks come in many forms, but generally are machines that allow for medical services, such as blood pressure testing, to be performed at locations other than doctor's offices. The dispute concerns Patent No. 6,692,436, ('436 Patent) which Defendant CSI received in 2004.[5]

Plaintiff HealthSpot is a Delaware corporation with its principal place of business in Ohio.[6] Defendant CSI is a Nevada corporation with its principal place of business in Nevada.[7] In seeking dismissal on personal jurisdiction grounds, CSI says that it does not conduct business in Ohio, is not registered to conduct business in Ohio, maintains no place of business in Ohio, has no bank account or employees in Ohio, and neither owns nor leases real estate in Ohio.[8] CSI further says that it has not shipped products to Ohio in "several years" and does not conduct sales activities in Ohio.[9]

In total, CSI says that it has sold about 4,700 kiosks, of which 1,807 are "active."[10] CSI acknowledges that seven kiosks it previously sold remain present in Ohio, of which three are "active."[11] CSI has ongoing service contracts for the three "active" kiosks, but outsources them to independent contractors.[12] While it says it "does not have any ongoing relationship with the owners of" the four "inactive" kiosks, CSI has received calls for assistance from these owners on four

---

[5]Doc. 13 at 2. The '436 Patent initially had fifty-seven claims. In 2011, a reexamination certificate confirmed the patentability of these claims, as well as eight new ones. *Id.*

[6]Doc. 1 at 1.

[7]Doc. 14-1 at 1.

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Id.* at 1-2.

[12]*Id.* at 2.

Case No. 1:14-CV-00804
Gwin, J.

separate occasions.[13]  Although it leases kiosks in other states, CSI says that it has no outstanding kiosk leases in Ohio.[14]

In part, Plaintiff HealthSpot argues that CSI's communications with HealthSpot regarding HealthSpot's alleged infringement subject CSI to personal jurisdiction in Ohio.  As described below, under controlling Federal Circuit case law, this argument requires that these communications constituted sufficient contacts with Ohio that related to CSI's defense or enforcement of its patent rights and went beyond sending cease and desist letters and offers to license.

The first contact between the parties appears to have come in April 2012, when Charles Bluth, the President and CEO of Defendant CSI, sent a letter to Steve Cashman, the CEO of Plaintiff HealthSpot.  The letter warned that HealthSpot might be infringing CSI's patent rights.[15]  Bluth requested that HealthSpot stop any potentially infringing activity and suggested that HealthSpot contact CSI regarding licensing.[16]

Then, in February 2013, Bluth sent Cashman another letter.[17]  This letter indicated that the parties had spoken in June 2012.[18]  It also said that "several recent press releases" suggested to CSI that HealthSpot's kiosks "appear[ed] to be violating CSI's Patent" and requested information to facilitate licensing discussions.[19]

---

[13]*Id.*
[14]Doc. 26-1.
[15]Doc. 21-7.
[16]*Id.*
[17]Doc. 21-8.
[18]*Id.*
[19]*Id.*

-3-

Case No. 1:14-CV-00804
Gwin, J.

Representatives of the two companies met in April 2013 in Reno, Nevada.[20] After the meeting, Bluth emailed Cashman.[21] In this email, Bluth described uncertainty regarding how HealthSpot's kiosks worked, but said that CSI did not believe the HealthSpot kiosks "impact[ed]" CSI's patent rights.[22] Bluth also stated an intent to "protect CSI's Patents, the market we have created, and the concept of Telehealth that we created."[23]

Several months later, in September 2013, Defendant's President and CEO Bluth again emailed Cashman. This time, although still indicating some uncertainty about how HealthSpot's kiosks worked, Bluth said that HealthSpot's website suggested that HealthSpot was violating CSI's patent rights.[24] CSI says that before this email, Bluth examined a HealthSpot kiosk at an August 2013 Las Vegas trade show.[25]

On December 10, 2013, and after Bluth saw and read an article about HealthSpot in *Behavioral Healthcare Magazine*,[26] Bluth sent Cashman another email.[27] This email again alleged that HealthSpot was infringing the '436 Patent. It said that if HealthSpot declined to enter a license agreement by December 31, 2013, CSI would file a patent infringement lawsuit.[28] In an apparent reference to HealthSpot's status as a start-up company, the email also said that "[i]t will also be very

---

[20]Doc. 26-4 at 3.

[21]Doc. 1 at 3.

[22]Doc. 19 at 12.

[23]*Id.*

[24]*Id.* at 12-13.

[25]*See* Doc. 26-1 at 1.

[26]Doc. 1-5.

[27]Doc. 1 at 3.

[28]Doc. 19 at 6.

-4-

Case No. 1:14-CV-00804
Gwin, J.

interesting to see if you have raised funds and have not disclosed the Patent violations."[29]

At this point, communications between the companies shifted to their respective attorneys. Over the next several months, CSI's attorneys continued to claim that HealthSpot was violating CSI's patents and should purchase a license.[30]  HealthSpot's attorneys responded that HealthSpot was not infringing the patents and that the infringement allegation rested on a misunderstanding of advertising material.  HealthSpot also asked to demonstrate its product to CSI, which it believed would dispel the infringement claim.[31]

CSI repeatedly declined these invitations to examine the HealthSpot product, saying that it believed it had sufficient information to support the infringement charge.  It told HealthSpot that it would bring an infringement suit on April 11, 2014, if the matter remained unresolved.[32]  As that date approached, the frequency of emails between counsel for the parties increased.  Despite its threat, and despite HealthSpot not purchasing any license, CSI did not file suit on April 11, 2014, a Friday.

On the following Monday, April 14, 2014, the attorneys arranged a call for Tuesday the 15th to discuss the matter.[33]  Later on April 14, 2014, HealthSpot filed this declaratory judgment action.[34]  The next morning, CSI filed an infringement suit in United States District Court for the District of Nevada.[35]  That suit remains pending.

---

[29]*Id.* at 13.

[30]*See* Doc. 14-2.

[31]*Id.*

[32]*Id.* at 5.

[33]*Id.* at 1-2.

[34]*See* Doc. 1.

[35]Doc. 14 at 8; *see Computerized Screening Inc. v. Healthspot, Inc.*, No. 2:14-CV-00573 (D. Nev. filed Apr. 15, 2014).

Case No. 1:14-CV-00804
Gwin, J.

## II. Personal Jurisdiction

Federal Circuit law governs personal jurisdiction over a patentee defending against a declaratory judgment action because the action is "intimately involved with the substance of the patent laws."[36] "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due process."[37]

Defendant CSI has challenged the Court's personal jurisdiction over it only on due process grounds.[38] It expressly concedes that Ohio's long-arm statute extends to the limits of federal due process.[39] Although this statement is no longer correct,[40] the Court concludes that by making it, CSI has waived any argument it could have advanced based on the Ohio long-arm statute. Unlike defects in subject matter jurisdiction, those in personal jurisdiction may be waived or forfeited.[41] It follows that particular arguments challenging personal jurisdiction may be waived or forfeited as well.

Reaching the long-arm statute question would potentially work an unacceptable unfairness. If the Court were to conclude that personal jurisdiction was constitutionally permissible but invalid under state law, HealthSpot would unjustly find its case dismissed based on an argument it never knew it needed to oppose. Accordingly, the Court treats state-law arguments against personal

---

[36] *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

[37] *Graphic Controls Corp. v. Utah Med. Prods. Inc.*, 149 F.3d 1382, 1385 (Fed. Cir. 1998) (footnote omitted).

[38] Doc. 14 at 2.

[39] *Id.* (citations omitted).

[40] *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). Twelve years ago in *Hildebrand*, the Federal Circuit recognized that, contrary to its previous decision in *Akro Corp. v. Luker*, which had held that Ohio permitted personal jurisdiction to the limits of due process, 45 F.3d 1541, 1544 (Fed. Cir. 1995), the Ohio Supreme Court has squarely held that it does not. *Hildebrand*, 279 F.3d at 1354 n.1 (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994)).

[41] *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).

Case No. 1:14-CV-00804
Gwin, J.

jurisdiction as waived and focuses, as the parties have, solely on federal constitutional limits.

The plaintiff bears the burden of demonstrating that the defendant is subject to personal jurisdiction.  Where, as here, a motion to dismiss for lack of personal jurisdiction is decided without an evidentiary hearing, the plaintiff needs only to "make a prima facie showing that defendants are subject to personal jurisdiction."[42]  Thus, "a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor."[43]

Personal jurisdiction comes in two broad forms.  Under general personal jurisdiction, a defendant has sufficient contacts with the forum to allow a lawsuit on any claim, whether or not the claim is related to the contacts with the state.  Under specific personal jurisdiction, the defendant's contacts subject it to suit, but only on claims that sufficiently relate to the contacts.

## A. General Jurisdiction

Turning first to general personal jurisdiction, due process allows a state to assert general personal jurisdiction over a corporation where "that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'"[44]  The state of a corporation's incorporation and the state containing its principal place of business are "paradigm all-purpose forums."[45]  Although the Supreme Court has left open the possibility that other states could also qualify to entertain general jurisdiction over a non-resident corporation, it has suggested

---

[42]*Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).
[43]*Id.*
[44]*Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).
[45]*Id.* at 760.

Case No. 1:14-CV-00804
Gwin, J.

that this would be "an exceptional case."[46/]

General personal jurisdiction is thus improper where the defendant's contacts with the state are merely "sporadic and insubstantial,"[47/] or even where they are "systematic and continuous" without rising to the level of making the defendant "essentially at home in the forum State."[48/]  Along these lines, the Supreme Court has indicated that earlier citations to two cases that "upheld the exercise of general jurisdiction based on the presence of a local office . . . should not attract heavy reliance today."[49/]

Plaintiff HealthSpot's argument for general personal jurisdiction rests primarily on the CSI kiosks located in Ohio.  Pointing to advertising materials on CSI's website, HealthSpot suggests that CSI's Ohio kiosks effectively function as virtual offices by performing tests (such as measuring blood pressure), storing information, connecting patients to doctors, and complying with HIPAA.[50/]  HealthSpot further says that the kiosks are used for a large number of tests and that CSI has a network of health care providers who operate through the kiosks.[51/]

Defendant CSI disputes all of these allegations, saying that all of its Ohio kiosks are older models that basically do no more than automate blood pressure and heart rate screening.[52/]  In any event, even if the kiosks were the more modern type described on CSI's website and even if they did function as virtual offices, CSI would still not be subject to general personal jurisdiction in Ohio. Because CSI is a Nevada corporation with a principal place of business in Nevada, Ohio is not a

---

[46/]*Id.* at 761 n.19.

[47/]*Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008).

[48/]*Daimler AG*, 134 S. Ct. at 761 (internal quotation marks and citation omitted).

[49/]*Id.* at 761 n.18 (internal citations omitted).

[50/]Doc. 19 at 9-11.

[51/]*Id.* at 10-11.

[52/]Doc. 26 at 1-3.

Case No. 1:14-CV-00804
Gwin, J.

"paradigm all-purpose forum[]" as defined by the Supreme Court.  Nor has HealthSpot sufficiently

shown this to be an "exceptional case" in which general jurisdiction would nonetheless be proper.

Accordingly, Plaintiff HealthSpot's argument for general personal jurisdiction falls short.

### B. Specific Jurisdiction

Plaintiff Healthspot's arguments for specific personal jurisdiction, however, fare better.  The

Federal Circuit uses a three part test to analyze constitutional limits on specific personal jurisdiction.

First, the defendant must have purposefully directed its activities at residents of the forum.  Second,

the plaintiff's claims must arise from or relate to those activities.  And third, the assertion of personal

jurisdiction must be reasonable and fair under the circumstances.[53]

Because the purpose of patent declaratory judgment actions is to "clear the air of

infringement charges" and thus free the plaintiff from unwarranted efforts to use patents to restrain

"the free exploitation of non-infringing goods," the contacts relevant for specific jurisdiction are

those that relate to the patent's enforcement.[54]  By contrast, neither sales nor non-exclusive licenses

can give rise to specific personal jurisdiction for declaratory judgment suits because they relate to

the patent's commercialization rather than to its enforcement.[55]

Moreover, not all attempts to enforce patents can give rise to specific personal jurisdiction.

The mere sending of cease and desist letters is insufficient.[56]  And the inclusion of an offer to license

in the cease and desist letter does not change this result.[57]  The Federal Circuit has imposed these

---

[53]*AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012) (citation omitted).

[54]*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (internal quotation marks and citation omitted).

[55]*Id.* at 1335-36 (internal citations omitted).

[56]*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998).

[57]*Id.* at 1361.

Case No. 1:14-CV-00804
Gwin, J.

restrictions based on the policy judgment that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum."[58/]

On the other hand, actions that go beyond merely sending cease and desist letters and offers to license can support personal jurisdiction.  As the Federal Circuit has described, "Examples of these other activities [giving rise to specific personal jurisdiction] include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum."[59/]  In making this assessment, courts may consider phone calls, emails, and letters sent into the forum state.[60/]

Thus, in this case, the critical question is whether enough of Defendant CSI's extensive enforcement related communications to HealthSpot in Ohio went beyond the safe harbor allowed with regard to sending cease and desist letters and offers to license.  Although it is a close call, the Court concludes that they did.  Against the backdrop of Federal Circuit cases holding that even relatively slight actions outside the safe harbor can suffice, CSI's apparent threat to HealthSpot's ability to raise funds and its repeated uncarried out threats of litigation subject CSI to personal jurisdiction in Ohio.

For example, in *Electronics for Imaging, Inc. v. Coyle*, the Federal Circuit concluded that specific personal jurisdiction was proper based on three actions.  First, the declaratory judgment

---

[58] *Id.* at 1360-61.

[59] *Avocent*, 552 F.3d at 1334 (internal quotation marks and citation omitted).

[60] *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351 (Fed. Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Case No. 1:14-CV-00804
Gwin, J.

defendant had hired a forum-state attorney to contact the declaratory judgment plaintiff.[61]  Second, it had repeatedly called the plaintiff in the forum state to update it on the progress of its patent application.[62]  And third, two of its representative had attended a demonstration of the allegedly infringing product in the forum state.[63]  The Federal Circuit concluded that these slight contacts, taken together, were enough to establish a "prima facie case that defendants, by engaging in significant activities in [the forum state], purposefully directed their activities to [the forum state]."[64]

Likewise, in *Campbell Pet Co. v. Miale*, the Federal Circuit found specific personal jurisdiction proper based on relatively minor actions outside the safe harbor.[65]  There, the defendant had attended a convention in the plaintiff's home state where the plaintiff had a booth.[66]  While there, the defendant had unsuccessfully asked the convention's manager to close down the plaintiff's booth on infringement grounds and told potential customers that the plaintiff's products were infringing.[67]  The Federal Circuit found these actions sufficient to support specific personal jurisdiction because they were "'extra-judicial patent enforcement' . . . targeted at [the plaintiff's] business activities in [the forum state]."[68]  As the court put it, "[t]hose efforts go beyond simply informing the accused infringer of the patentee's allegations of infringement."[69]

Although CSI's contacts outside the safe harbor differ somewhat from those in *Electronics for Imaging* or *Campbell Pet*, they are at least as substantial.  CSI expressed an intent to interfere

---

[61]*Id.*

[62]*Id.*

[63]*Id.*

[64]*Id.* (internal quotation marks and citation omitted).

[65]*Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008).

[66]*Id.* at 881-82.

[67]*Id.* at 882.

[68]*Id.* at 886.

[69]*Id.*

-11-

Case No. 1:14-CV-00804
Gwin, J.

with Plaintiff HealthSpot's attempts to raise capital as a startup.  Moreover, by repeatedly threatening

to sue on particular dates and then not following through, CSI subjected HealthSpot to precisely the

sort of infringement charges that might "restrain the exploitation of non-infringing goods" and that

declaratory judgments are designed to "clear the air" of.

Fairness requires that patentees have the ability to notify potential infringers of the patent and

threaten litigation without subjecting themselves to declaratory judgment suits in distant forums.

But it does not provide immunity from jurisdiction for repeatedly threatening litigation without

following through or for other actions that could well intimidate compliance even in the absence of

infringement.[70]

Having concluded that Defendant CSI has engaged in enforcement activities that go beyond

the mere sending of cease and desist letters and offers to license, the Court turns to the third prong

of the Federal Circuit's test.  "When a defendant seeks to rely on the 'fair play and substantial

justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal

jurisdiction over the defendant, 'he must present a compelling case that the presence of some other

considerations would render jurisdiction unreasonable.'"[71]  In making this determination, courts

---

[70]Plaintiff HealthSpot also points to an interview that Bluth gave to *Columbus Business First*, an online Ohio publication.  *See* Doc. 19 at 7 (citing Doc. 21-5).  This interview was given after the complaint in this case was filed.  The issue of whether post-complaint contacts can be considered is somewhat unsettled.  *See* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1069 (3d ed. 2013).  Most courts to consider the issue have held that contacts arising after a complaint has been filed cannot support personal jurisdiction, *see* Todd David Peterson, *The Timing of Minimum Contacts*, 79 Geo. Wash. L. Rev. 101, 141 (2010), but at least one commentator has suggested that this restriction has been insufficiently reasoned, *see id.* at 155-58; *see also* Todd David Peterson, *The Timing of Minimum Contacts After* Goodyear and McIntyre, 80 Geo. Wash. L. Rev. 202, 237-241 (2011).  The parties have not addressed this issue, and the Court is not aware of any Federal Circuit case squarely deciding it.  To the degree contacts arising after the complaint can be considered, Bluth's interview statements are analogous to allegations of infringement targeted to the plaintiff's customers in the forum state in *Campbell Pet*, and thus would provide additional support for specific personal jurisdiction.  But because the Court concludes that CSI's other contacts subject it to specific personal jurisdiction, it need not resolve this unsettled timing issue.

[71]*Campbell Pet*, 542 F.3d at 885 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Case No. 1:14-CV-00804
Gwin, J.

consider "factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."[72/]

In this case, Defendant CSI has not advanced fairness arguments that go beyond the contention that it engaged only in sending cease and desist letters and offers to license protected by the safe harbor.  As described above, the Court rejects this contention.  The Court therefore concludes that CSI has not carried its burden of demonstrating that subjecting it to personal jurisdiction in Ohio would fail to comport with "fair play and substantial justice."

### III. Anticipatory Filing

In the alternative, Defendant CSI argues that this case should be dismissed or transferred to the District of Nevada because Plaintiff HealthSpot impermissibly filed its declaratory judgment suit in anticipation of CSI's infringement suit.  It says that this "procedural fencing" should overcome the general first-to-file rule and lead the Court to decline to exercise its discretion to hear this declaratory judgment action.

### A. Governing Law

As an initial matter, the parties appear to disagree about what circuit's law applies to this argument.  Defendant CSI relies primarily on Sixth Circuit precedent, pointing to *Foundations Worldwide, Inc. v. Oliver & Tate Enterprises, Inc.*[73/]  There, the court determined that "[a] review of similar cases shows that Sixth Circuit law applies to the question of whether to dismiss a

---

[72/]*Id.* (quoting *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351-52 (Fed. Cir. 2003)).

[73/]No. 1:13-CV-506, 2013 WL 4054636, at *5 (N.D. Ohio Aug. 12, 2013).

Case No. 1:14-CV-00804
Gwin, J.

declaratory action."[74]  In turn, *Foundations Worldwide* cited three cases from district courts within the Sixth Circuit, each of which applied Sixth Circuit law to the question,[75] although none of those three cases discuss the possibility of applying Federal Circuit case law.  The *Foundations Worldwide* court also said that "[e]ven if Federal Circuit law applie[d] . . . the case for dismissal is even stronger."[76]

On the other hand, Plaintiff HealthSpot relies on the Federal Circuit's decision in *Electronics for Imaging, Inc. v. Coyle*.[77]  Although HealthSpot does not cite it for this particular proposition, the court there squarely held that "[t]he question whether to accept or decline jurisdiction in an action for a declaration of patent rights in view of a later-filed suit for patent infringement impacts this court's mandate to promote national uniformity in patent practice.  Because it is an issue that falls within our exclusive subject matter jurisdiction, we do not defer to the procedural rules of the regional circuits nor are we bound by their decisions."[78]  The Court finds this clear holding controlling, and thus concludes that Federal Circuit law governs this question.

### B. Law and Analysis

The Federal Circuit clearly stated its test for declining to follow the first to file rule in *Electronics for Imaging*:

> We apply the general rule favoring the forum of the first-filed case, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise.  Exceptions are not rare, but we have explained that there must be sound reason that would make it unjust or inefficient to continue the first-filed action.  While it is true that a district court may consider whether a party

---

[74]*Id.*

[75]*Id.*

[76]*Id.*

[77]394 F.3d 1341 (Fed. Cir. 2005).

[78]*Id.* at 1345-46 (citing two additional Federal Circuit cases).

-14-

Case No. 1:14-CV-00804
Gwin, J.

intended to preempt another's infringement suit when ruling on the dismissal of a declaratory action, we have endorsed that as merely one factor in the analysis. Other factors include the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest. The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action.[79]

In *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, the Federal Circuit reiterated this test, and further specified that in cases "when the discretionary determination [of whether to entertain a declaratory judgment action] is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under [28 U.S.C. § 1404(a)]."[80] Thus, it continued, "The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice must be evaluated to ensure the case receives attention in the most appropriate forum."[81]

Here, Defendant CSI has advanced no argument that witnesses will be unavailable in Ohio. The only party CSI says this Court lacks jurisdiction over is itself, and, as noted above, the Court rejects that argument. And there is no related litigation for consolidation other than the infringement claim in Nevada, which could just as easily be consolidated here. Thus, the only additional factor Defendant could potentially succeed in establishing is "the interest of justice."

As provided in *Electronics for Imaging* and *Micron*, the mere fact that the complaint was filed in anticipation of an infringement suit does not overcome the "general rule favoring the forum of the first-filed case." To be sure, Defendant CSI does go further, arguing that Plaintiff HealthSpot

---

[79] *Id.* at 1347-48 (internal quotation marks, alterations, paragraph break, and citations omitted).
[80] 518 F.3d 897, 904 (Fed. Cir. 2008).
[81] *Id.* at 904-05.

-15-

Case No. 1:14-CV-00804
Gwin, J.

sought to delay CSI's filing of its infringement suit in bad faith so that HealthSpot could obtain its favored forum.[82]  Specifically, CSI says that on Friday, April 11, 2014, the day CSI had previously told HealthSpot it was going to file its infringement suit, HealthSpot sent CSI an email saying, "[i]f CSI concludes after the inspection that the commercial version of the [HealthSpot] kiosk falls within the scope of any of the claims of the '436 Patent, HealthSpot . . . will then consider the CSI licensing proposal or agree to change the configuration of the [HealthSpot] kiosk to address CSI's concerns."[83]

CSI refrained from filing its infringement suit on April 11, 2014.  On Monday April 14, 2014, the parties scheduled a conference call for the following morning.[84]  Later on the 14th, this declaratory judgment suit was filed, followed the next morning by the infringement suit in the District of Nevada.[85]

Defendant CSI says that when HealthSpot indicated on April 11, 2014, that it would consider a license or other non-judicial resolution after further investigation, HealthSpot impermissibly sought "to delay CSI and ensure its own action would be filed first."[86]  HealthSpot agrees with the chronology set out by CSI, but sharply disputes CSI's characterization of the correspondence. HealthSpot says that there were no active settlement negotiations and that it never represented to CSI that it would refrain from filing suit.[87]

The Court concludes that Plaintiff HealthSpot's interpretation is the better one.  Over the course of multiple emails, HealthSpot had maintained that it wanted the chance to demonstrate its

---

[82] Doc. 14 at 9.
[83] Doc. 14-2 at 3.
[84] Doc. 14 at 8.
[85] Id.
[86] Id. at 9.
[87] See Doc. 19 at 16-17.

Case No. 1:14-CV-00804
Gwin, J.

product to Defendant CSI before deciding whether to proceed with a license, product modification, or otherwise.[88]  Meanwhile, CSI had persistently refused such a meeting or demonstration.[89] HealthSpot's April 11, 2014, email does no more than reiterate HealthSpot's position in this ongoing impasse.  And HealthSpot is correct that its email nowhere says that it would refrain from filing suit.

Moreover, CSI has not explained why HealthSpot would send an email to delay CSI's filing of its coercive suit rather than simply filing its own declaratory judgment action prior to April 11, 2014.  HealthSpot had been aware of CSI's April 11, 2014, deadline since CSI announced it in a March 31, 2014 email.[90]  This presumably would have been enough time for HealthSpot to complete and file the declaratory judgment complaint before April 11, 2014, had it wanted to do so.  Given these considerations, the fact that on April 14, 2014, HealthSpot and CSI scheduled a conference call for the following day neither disabled HealthSpot from filing this action nor made doing so improper.

Defendant CSI also argues that the Court should decline to exercise jurisdiction over this case by deploying a presumption that declaratory judgment actions filed shortly before corresponding coercive suits are improper.  But in support, CSI points only to *Foundations Worldwide*, which, as discussed above, relied on Sixth Circuit law.[91]  No such presumption applies in the Federal Circuit.[92] The Court will therefore exercise its discretion to hear Plaintiff HealthSpot's declaratory judgment

---

[88]*See* Doc. 14-2.

[89]*Id.*

[90]*Id.* at 5.

[91]*See* Doc. 26 at 9 (citing *Foundations Worldwide, Inc. v. Oliver & Tate Enters., Inc.*, No. 1:13-CV-506, 2013 WL 4054636, at *3-4 (N.D. Ohio Aug. 12, 2013)).

[92]*Micron Tech., Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) ("A district court may consider a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action, but that consideration is merely one factor in the analysis. . . . [T]he considerations affecting transfer to or dismissal in favor of another forum to not change simply because the first-filed action is a declaratory action."); *see Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005) (similar).

-17-

Case No. 1:14-CV-00804
Gwin, J.

action.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant CSI's motion to dismiss or transfer.

IT IS SO ORDERED.


Dated: December 8, 2014                    s/         *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE